Ms. Jacobs. May it please the Court, good morning. Michelle Jacobs for Mr. Estrada. This Court, I would readily acknowledge, regularly hears these claims of procedural error at sentencing and the failure to discuss defendant's mitigation evidence, just like the district courts regularly hear cases of illegal reentry after deportation. These are pretty common cases, oftentimes very straightforward cases in the district court, oftentimes guilty plea cases in the district court, oftentimes with defendants with very similar backgrounds. But that sort of regularity doesn't mean that they're frivolous. That sort of straightforwardness in the district court does not mean that these defendants are any less entitled to the protections that this Court's decisions, the Supreme Court's decisions afford. Here, Mr. Estrada's sentence should be vacated. I would suggest that the district court has not adequately explained its chosen sentence, failed to adequately consider the mitigation evidence, and in fact, I think if one considers what the district court actually said in those eight lines of transcript to explain the guideline sentence that it imposed, that explanation really could be found in any illegal reentry case at sentencing. A judge that fails... Ms. Jacobs, can I ask you, I frankly have different reactions to different mitigation arguments here in terms of the extent of the response needed from the district court. I thought the strongest was the argument that Mr. Estrada Medeiros spent at least some significant amount of time in state custody only because there was a federal detainer against him. Is that correct, and can you tell me how much and when it was? I think there's some dispute, as I understand it, about the length of time that he was in custody and for what purposes. As I understand it, there was state time, there was then some time he was in custody on an immigration hold, and then he was in custody on this case. Right, and it is a very strong argument that he was in custody only on an immigration hold. Can you give us an idea, can you direct us to the details of that? I don't have the pre-sentence report citations in front of me, but I think the best evidence is the pre-sentence report, although I know in the government's brief they do indicate, and I think there was some discussion of it during the sentencing, there was some dispute about how long and for what periods he was in custody on what different charges and what different holds. But I would agree with you that given the guideline provision that allows for concurrent time to be imposed, 5G 1.3, in these kinds of cases, and the case law on the delay in charging, Villegas, Miranda, and the like, that it is and was an argument of recognized legal merit that the court should have at least commented on. I'm not here today to say that the district court was required to impose a different sentence. Obviously not. However, these decisions say that when there are cases of recognized legal merit, and when there are arguments that are factually well-grounded, the district court has to address them. And that's why I say it's particularly troubling, I think, in these really straightforward cases. I think we all get a little bit numb to them because a lot of them look the same. But a good example of that from this court. Well, how much can we infer from, as you say, that everybody's aware of it, and why can't we take that as the fact that the district court had to consider it because it was all both sides and the court? Sure. There's sort of two responses to that, I think. The Supreme Court has said, first of all, that the court has to address these grounds of recognized legal merit. I think the defendants, quite frankly, I mean, we may get a little numb and they may all look the same, but these cases are not all the same for them. These are individual defendants who are now, for example, Mr. Estrada sitting in prison for almost five years. He has a right not only to be treated fairly, but to, as this court said in Washington within the last year or so, the perception of fairness in these sentencings is just as important. And Washington is a good case, I think, to consider. That was a drug case. It wasn't a legal reentry. But it was a defendant who was making arguments that he wanted to be more involved with his family, he wanted to have more contact with his children. This court said that the comment or the explanation that the district court gave, which was I've considered all the 3553 factors, but this is a serious crime, and so I'm imposing such and such a sentence, it's not enough. Well, you'll have to forgive me because I sentenced before the sentencing guidelines, and we didn't have to give any justification. I understand. I understand. I sort of was not in that part of the system, but I went through the mandatory guidelines system for a long time, and then this one, and now on both sides of it. And so I understand that reaction to it, but I also would suggest that even under the statute, 3553C1 says that any sentence over 24 months, the court, even in a guideline sentence, is supposed to explain where or why the court chooses a particular sentence. And so the delay in charging argument was one of recognized legal merit. The collateral consequences to deportation, again, it may be that courts hear that a lot. I would readily acknowledge it. But, again, it is one that has been recognized both factually and legally as one of merit, and there's no mention of it here. In my reply brief, I think it's also important that the court take a look at sort of the defenses to these kinds of things, again, because they're raised so often in these cases. It's a stock argument, right? It's one you see regularly. No need to talk about it. But there really is a difference between a stock argument, in other words, one you see regularly, and a frivolous argument. I'm not here to argue that district courts have to comment on frivolous arguments. But we've also held that they don't need to comment on stock arguments. Do you want us to overrule those cases? Well, Washington actually says something slightly different, and that, you know, I think that the movement would be away from just sort of backhanding each and every argument that a defendant makes. Again, because cases like Gaul says — Do you wish to address my question? Do you want us to overrule those cases? I don't know that, Judge, that I'm asking anybody to overrule those particular cases, but Gaul, the Supreme Court says that there is supposed to be an individualized assessment of these defendants. And I'm going to go back to the district court's explanation of the sentence that it was imposed. He said some factors push it up, some factors push it down. This is a recidivist crime. It has to be. It's illegal reentry after deportation for an aggravated felony. And based on those factors and the guidelines, I'm imposing a guideline sentence. That's not much of an individualized assessment. So whatever terminology we use, whether we talk about stock arguments or not, there's no individualized assessment here of Mr. Estrada's. But you do run the risk of going back and receiving a greater sentence, though, right? He does. He does. And he understands that. I'm sure he's aware of that. And he understands that. Ms. Jacobs, let me just think out loud a little bit with you. The challenge to the 16-level cliff in the guideline here seems to me, frankly, like the kind of argument that we've said district courts really don't have to engage fully. That is, you can argue it's a bad guideline, in some other cases involving child pornography guidelines or others, that the Sentencing Commission didn't give sufficient consideration, didn't have sufficient evidence, et cetera. And we've basically said district judges don't have to. They can. But they don't have to duplicate the work of the Sentencing Commission in justifying those guidelines. And this argument sounds to me like that kind of an argument. But if I'm wrong, I'd like to hear why. Same kind of thing with the collateral consequences here of the fact that he's going to be deported. It's not really the length of the sentence that will produce those consequences. It's the deportation. Well, on the collateral consequences, though, it was an argument not just that he doesn't see his family anymore, although that is part of the argument, and that's certainly a 3553, general 3553 factor that's being ignored here. I think the collateral consequences, you know, it goes further to the home confinement, not being eligible for home confinement and those types of things. So it was both a 3553, the nature and circumstances not only of the offense, but the defendant's history and characteristics that were being rejected, or, again, being ignored. I would also say, and I see my time is up, if I can just briefly touch on the 16-point enhancement, the guideline enhancement. I understand that this court has said that just sort of a general disagreement with a guideline or the Sentencing Commission's rationale is not appropriate, or you don't have to. Right. On the other hand, Kimbrough and cases like that certainly say that if a judge does have a disagreement with it, with a guideline, they are able, on a policy basis, to reject it. And I guess what I would suggest is there was a very thorough, well-researched sentencing memorandum and argument made to the district court. I understand it's only one of the three arguments in mitigation, but given the severity of the jump here, I think it would have been appropriate to say something, even if it was nothing more than I think there's some. I would accept that argument without overruling Ramirez-Fuentes, which said that that's the kind of stock argument district judges may ignore. And you say you're not asking us to overrule any cases, but Ramirez-Fuentes looks like it's absolutely squarely on point and against your position. Well, again, Judge, I'm not asking you to overrule any of the cases, but I am asking you to also consider them in the context of the Supreme Court's requirement of some individualized assessment. If you think our law in the Seventh Circuit is inconsistent with the Supreme Court's, that's fine. That's an argument for overruling them. It is not an argument for ignoring them, which is effectively what you're asking us to do. I don't think I'm asking you to ignore any of the cases, but I would also ask that the court consider. Well, the whole thing with Ramirez-Fuentes is that district courts don't have to address at least two of the three arguments that were made in this case. We can't require the district court to address them without overruling that decision. No, but you can require the district court to make some individualized assessment of the sentence that it's going to impose. Have you read Ramirez-Fuentes? Yes, I have. Thank you, counsel. Thank you. Ms. Ewing. Good morning. May it please the court. Minnie Ewing for the United States. To first address Judge Hamilton's question about the immigration hold, Mr. Estrada-Medeiros was in immigration custody following his state sentence starting in April of 2013. There was a delay between April and October of 2013 when he was federally indicted on the legal reentry because he sought relief before the immigration court, and that is why he was ‑‑ there was a lag in the time between the time he came into immigration custody and the time that he was federally indicted. And what does that add up to? That adds up to a period of six months. In the PSR, on page four of the PSR, it states that Mr. Estrada-Medeiros sought asylum. I'm sorry, he sought protection under the Convention Against Torture, and the interdiction of that took about six months. And he was in custody. He was in custody. He was in immigration custody during that time. He had finished his state sentence. He had finished his state sentence as of April of 2013. And even if he had gone directly from state custody into federal criminal custody, the guidelines would allow some credit, right, or some concurrence? The guidelines, if he had gone straight from state to federal custody, he could certainly ask for some credit to be taken because he had been in state custody. It's a reasonable argument. It is a reasonable request. You may or may not win it. Right. Okay. That's the part of this case that I find most troubling with the district judge's apparent failure to address what sounds like at least a respectable argument, that my sentence winds up being longer because of these delays in actually getting me into the federal criminal process. The district court actually did state on page 18 of the transcript that the time that Mr. Estrada-Medeiros spent in custody, in state and immigration custody prior to his federal indictment, was something that, quote, the district court considered in going to the low end of the guideline range because, frankly, there were factors that would indicate a higher sentence should be imposed. So the district court, it was something that did recognize that that was a problem and attempted to address it. That was something, yes, that was something that the district court took into consideration when it imposed a low end guideline range in this case, 57 months. The district court, although it was not required to, as this panel has stated, considered the 16-level enhancement argument. It ultimately concluded that a 16-level enhancement was appropriate given this defendant's criminal history and the nature of the legal reentry, that it was a recidivist crime. Although the district court was not required to address the stock arguments, namely the 16-level enhancement argument and the collateral consequences argument, what it was required to do was address the 3553A factors. And that is something that is seen in the Washington case that the defendant cites. The fact that a district court is presented with stock arguments, it still, while it does not have to explicitly address the stock arguments, still has to make an individualized 3553A finding when it is imposing a sentence. There was a question asked at the end of whether you'd be getting credit for time, sir, and the district court said that's a Bureau of Prisons matter. Yes. Yes. And then it went on to state that the fact that the defendant had spent time in immigration custody was something that it considered in going to a low end of the guideline range. He wasn't specific. He wasn't that specific, was he? He, in fact, stated on page 18, and this is a direct quote, in reference to the time spent in custody, that, quote, I can, that was a. . . On other charges without any specific reference to the immigration custody. Correct. He was not specifically referencing the immigration hold. It was more of a generalized custody statement. The district court did address the 3553A factors in this case in making an individualized sentence. It stated that the fact that the defendant had engaged in other criminal activity in the United States while here illegally and the fact that illegal reentry is a recidivist crime was something that was not in his favor and concluded ultimately that a sentence of 57 months at the low end of the guideline range was appropriate in this case. If there are no other questions. . . Calling this a recidivist crime, though, is sort of. . . That really doesn't tell us anything, right? Because we all know it is. The guidelines take that into account, and that really doesn't explain anything about the sentence, does it? I think it is something, yes, that all parties are aware of because that is the nature of the crime, but it helps inform why the district court decided to go with a sentence within the guideline in that it was agreeing with the guideline policy.  In closing, I ask you to affirm the sentence below. Thank you very much. The case is taken under advisement. Ms. Jacobs, we appreciate your willingness to accept the appointment in this case and your assistance to the court as well as your client.